## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. 23-cv-00399 |
| THE WASHINGTON TRUST COMPANY, OF WESTERLY, | |
| Defendant. | |

## CONSENT ORDER

### I.    INTRODUCTION

The Parties jointly submit this Consent Order for approval and entry by the Court.  The Order resolves all claims of the United States of America ("United States") alleging that, from 2016-2021, The Washington Trust Company, of Westerly ("Washington Trust" or the "Bank") engaged in a pattern or practice of unlawful redlining in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, and its implementing Regulation B, 12 C.F.R. § 1002.1 *et seq.*, by discriminating on the basis of race, color, and national origin.  Specifically, the United States alleges that Washington Trust engaged in illegal redlining by avoiding providing home loans and other services, and engaged in discrimination and conduct that would discourage loan applications from prospective applicants who are residents of, or seeking credit in, majority-Black and Hispanic census tracts in the State of Rhode Island. Washington

1

Trust strongly denies the allegations in the Complaint and Consent Order except that, for the purposes of the Consent Order, the Bank admits facts necessary to establish this Court's jurisdiction over it and over the subject matter of this action.

The Court has jurisdiction over the Parties and subject matter of this action. There have been no factual findings or adjudication in this case. The Parties enter into this Consent Order to voluntarily resolve all claims arising from the conduct alleged in the Complaint. Entry of this Consent Order is in the public interest. The Parties agree that the full implementation of the terms in this Consent Order will provide a resolution to the claims asserted in the Complaint in a manner consistent with Washington Trust's established business interests.

## II.    BACKGROUND

Washington Trust is a state-chartered bank headquartered in Westerly, Rhode Island, and subject to the regulatory authority of the Federal Deposit Insurance Corporation ("FDIC"). Washington Trust offers personal, commercial, consumer, and mortgage banking, and wealth management and trust services. Washington Trust currently maintains 25 branches in Rhode Island and one branch in Connecticut. As of March 31, 2023, Washington Trust's total assets equaled approximately $6.85 billion. Washington Trust is the principal subsidiary of Washington Trust Bancorp, Inc., a publicly-owned bank holding company headquartered in Westerly, Rhode Island.

In November 2021, the United States notified Washington Trust that it was opening an investigation into whether Washington Trust had engaged in unlawful

redlining in violation of the FHA and ECOA. After an investigation, the United States contends that, from 2016-2021, Washington Trust avoided serving the credit needs of, and discouraged those residing or seeking credit in, majority-Black and Hispanic census tracts in Rhode Island from obtaining mortgage loans, while acting to serve the credit needs for mortgage loans in majority-white census tracts. Washington Trust maintains that it has never acted intentionally to avoid serving the credit needs of borrowers in majority Black and Hispanic census tracts or to discourage such borrowers or prospective borrowers from obtaining mortgage loans. Washington Trust represents that it has always taken, and will continue to take, action to ensure that Washington Trust properly serves all of the communities in its footprint.

## III.    TERMS OF THE ORDER

### A.    Lending Practices

1.    Washington Trust, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with them who have actual notice of this Consent Order, assignees, and successors in interest, is hereby enjoined from engaging in any act or practice that discriminates on the basis of race, color, or national origin that: (a) violates the FHA in any aspect of a residential real estate-related transaction; or (b) violates ECOA and Regulation B in any aspect of a credit transaction.

2.    Washington Trust will ensure that it offers and provides all persons with an equal opportunity to apply for and obtain credit, regardless of the demographic

composition of the area in which a person lives or the location of the property securing the loan.

3.    For purposes of this Consent Order, Washington Trust's "Rhode Island lending area" consists of all counties in the State of Rhode Island: Bristol, Kent, Newport, Providence, and Washington Counties.

4.    For purposes of this Consent Order, a "majority-Black and Hispanic" census tract is one where, as of the date of this Consent Order, more than 50 percent of the residents are identified as either "Black or African American" or "Hispanic or Latino" by the United States Census Bureau.  A "majority-white" census tract is one where, as of the date of this Consent Order, more than 50 percent of the residents are identified as "non-Hispanic white" by the United States Census Bureau.

5.    For purposes of this Consent Order, the "Effective Date" is the date this Consent Order is entered by the Court.

### B.    Community Credit Needs Assessment

6.    A Community Credit Needs Assessment is a research-based market study to help a lender identify the needs for financial services in an area.

7.    Washington Trust will submit to the United States for non-objection a Community Credit Needs Assessment for majority-Black and Hispanic census tracts within the Rhode Island lending area.  This Assessment must include the following information about majority-Black and Hispanic census tracts within Washington Trust's Rhode Island lending area: (1) an evaluation (to include market research and

interviews) of residential mortgage credit needs[1] and current lending opportunities available in the area; (2) recent demographic and socioeconomic data; (3) potential strategies for Washington Trust to provide residential mortgage products and lending services in these census tracts; (4) an assessment of potential appropriate locations and hours of operation for new branches in these census tracts; (5) a review of loan products offered by other lenders and their success in the market; and (6) recommendations that address how each requirement of the Consent Order should be carried out to best achieve the remedial goals of this settlement.

8.    The Community Credit Needs Assessment will be conducted by one or more independent, qualified third-party consultants selected by Washington Trust and subject to non-objection by the United States.  Within 30 days of the Effective Date, Washington Trust will submit the qualifications of the third-party consultant(s) to the United States for non-objection.  Within 30 days of receiving the United States' written notice of non-objection regarding the third-party consultant(s), Washington Trust must submit to the United States, for non-objection, a statement of work from the independent third-party consultant(s) describing their methodology for the assessment.  The United States agrees that the qualified consultant may rely on relevant data and other materials available to them from assessments already completed for Washington Trust by an independent third party consultant within the prior 12 month period before the Effective Date in developing the required statement

---

[1]    Residential mortgage credit needs include all dwelling-secured lending, including home purchase, home refinance, and home improvement loans.

5

of work.  Within 120 days of receiving the United States' written notice of non-objection regarding the statement of work, Washington Trust will submit to the United States the Community Credit Needs Assessment described in Paragraph 7.

9.      Once the United States has non-objected to the Community Credit Needs Assessment, Washington Trust will present the Assessment to all management, employees, and committees that are responsible for overseeing fair lending compliance.

10.     Within 60 days of receiving non-objection from the United States regarding the Community Credit Needs Assessment, Washington Trust will submit a plan that details, in light of the recommendations made in the Assessment, the actions Washington Trust proposes to take to comply with the requirements of the Consent Order (e.g., physical expansion, loan subsidy, community partnerships, and advertising), including specific timeframes for implementation of these actions.  The proposals within the plan will be subject to non-objection by the United States.

### C.        Fair Lending Compliance

11.     Within 120 days of the Effective Date, Washington Trust will supplement its existing annual third-party assessment of its fair lending program in the Rhode Island lending area, specifically to include fair lending obligations and lending in majority-Black and Hispanic census tracts.

12.     Within 150 days of the Effective Date, Washington Trust must produce a written report ("Fair Lending Status Report and Compliance Plan") that includes a review of the Bank's existing fair lending policies and practices, including compliance

monitoring; an analysis of the Bank's policies and practices related to the location of branches and marketing; a description of training and oversight for loan officers and their practices for solicitation of applications; and information on loan officers' compensation structure.

13.    The Fair Lending Status Report and Compliance Plan will specifically include the status of progress relating to, at least:

    a.  Any changes to Washington Trust's practices to reduce redlining risks in the Rhode Island lending area, including at a minimum, risk that may arise from branch locations or assignment of loan officers to branch locations, types of loan products, and marketing;

    b.  Any changes to Washington Trust's practices to improve its outreach to solicit applications for mortgage loan products, including home improvement loans;

    c.  Any changes made to existing written policies and procedures regarding marketing and training and monitoring of loan officers in marketing mortgage loan products, soliciting, and originating mortgage loans in the Rhode Island lending area;

    d.  Any changes made to Washington Trust's formal process for ongoing statistical monitoring of mortgage underwriting, pricing, and redlining risk, including statistical peer analysis of applications and originations from majority-Black and Hispanic census tracts in the Rhode Island lending area; and

e.  Any changes made to the reporting process of the Compliance Department to senior management and the Board of Directors once mortgage underwriting, pricing, and redlining risk have been identified and the remediation process to address such risk.

14.    If the United States objects to any portion of Washington Trust's Fair Lending Status Report and Compliance Plan, Washington Trust will make revisions and resubmit its proposal within 30 days of receiving the objection.  Washington Trust will begin implementation of its Fair Lending Status Report and Compliance Plan within 30 days of receiving the United States' non-objection.  Any material changes to Washington Trust's Fair Lending Status Report and Compliance Plan are subject to non-objection by the United States.

## D.    Fair Lending Training

15.    Within 30 days of the Effective Date, Washington Trust will provide an electronic copy of the Complaint and Consent Order in this matter to all employees with substantive involvement in mortgage lending, marketing, or fair lending or Community Reinvestment Act compliance in the Rhode Island lending area, or who have management responsibility over such employees; senior management with fair lending and marketing oversight; and members of the Board of Directors (collectively, "the Relevant Bank Staff and Officials").  Washington Trust will provide an opportunity for the Relevant Bank Staff and Officials to ask any questions concerning the Complaint and Consent Order, and Washington Trust will provide answers.

Washington Trust will provide a report that lists all persons and their titles to whom this Consent Order was made available within 45 days of the Effective Date.

16.    Washington Trust agrees to continue to provide training to the Relevant Bank Staff and Officials on Washington Trust's obligations under ECOA, Regulation B, and the FHA.  The training will be conducted by an independent, qualified third-party trainer selected by Washington Trust.  Within 60 days of the Effective Date, Washington Trust will submit the qualifications of the third-party trainer to the United States for non-objection.  Within 60 days of receiving written notice of non-objection from the United States regarding the independent, qualified third-party trainer, Washington Trust will deliver the training described in this Paragraph. Washington Trust will utilize its existing system for each individual to acknowledge that they completed fair lending training and will provide a report that includes these acknowledgements to the United States within 30 days after it has delivered the training.

17.    Washington Trust agrees to continue to provide the training described in Paragraph 16 annually to the Relevant Bank Staff and Officials.  The training may be held virtually or in person.  Washington Trust will implement a system for each individual to acknowledge that they completed fair lending training.  Washington Trust will provide a report that includes these acknowledgements to the United States as part of its annual reporting requirement under Paragraph 52.  Any proposed changes to the third-party trainer or the training curriculum are subject to non-objection by the United States.

18.    Any individual who becomes a Relevant Bank Staff or Official will, within 30 days of beginning the covered position, receive an electronic copy of the Complaint and Consent Order, with the opportunity to ask questions, as discussed in Paragraph 15.  Any individual who becomes a Relevant Bank Staff or Official will, within 60 days of beginning the covered position, receive the training discussed in Paragraph 16.  Washington Trust will utilize its existing system for each such individual to acknowledge that they received a copy of the Complaint and Consent Order, were given the opportunity to ask questions, and that they completed fair lending training.  Washington Trust will provide a report that includes these acknowledgements to the United States as part of its annual reporting requirement under Paragraph 52.

19.    Washington Trust will bear all costs associated with the trainings.

## E.    Director of Community Lending

20.    Washington Trust agrees to and has designated a full-time employee as the Director of Community Lending with the responsibility of overseeing the development of the Bank's lending in majority-Black and Hispanic census tracts in the Rhode Island lending area and the Bank's compliance with the Consent Order.

21.    The designated Director of Community Lending is charged with the responsibility of overseeing the development of Washington Trust's lending in majority-Black and Hispanic census tracts in its Rhode Island lending area and Washington Trust's compliance with this Consent Order.  Washington Trust will maintain this position throughout the term of this Consent Order.  If a new Director

of Community Lending is appointed at any time during the term of this Consent Order, Washington Trust will notify the United States within 10 days of the staffing change.

22.    The Director of Community Lending is an Executive Vice President who reports directly to Washington Trust's President and Chief Operating Officer.  The Director of Community Lending will provide reports on at least a quarterly basis to the Board of Directors and the Chief Executive Officer of the Bank regarding the Bank's activities related to the following:

    a.  reviewing the implementation and administration of all aspects of Washington Trust's compliance with the Consent Order;

    b.  monitoring loan officers' solicitation and origination of loans in majority-Black and Hispanic census tracts in the Rhode Island lending area, including the loan subsidy fund described herein;

    c.  coordinating the Bank's involvement in community lending initiatives and outreach programs;

    d.  encouraging and developing more lending within majority-Black and Hispanic census tracts;

    e.  promoting financial education;

    f.  providing financial counseling; and

    g.  building relationships with community groups.

11

### F.    Physical Presence in Majority-Black and Hispanic Census Tracts

23.     Subject to appropriate regulatory approval, Washington Trust must open or acquire two (2) new full-service branches located in majority-Black and Hispanic census tracts in its Rhode Island lending area. The full-service branches must be in retail-oriented spaces in visible locations and have signage that is visible to the general public.  The full-service branches must provide the complete range of services offered at the Bank's full-service branches and must accept first-lien mortgage loan applications.

24.     The parties agree that the Bank's planned Olneyville branch, once opened as a full-service branch location, satisfies and will count towards the requirements set forth in Paragraph 23 of this Consent Order, provided it is open within 18 months of the Effective Date.

25.     Washington Trust must make all reasonable efforts to open an additional new full-service branch within 30 months of the Effective Date.  If Washington Trust fails to open both full-service branches within 30 months of the Effective Date, Washington Trust will provide to the United States a written proposal describing how it will comply with Paragraphs 23 and 24.  Washington Trust will maintain the new full-service branches for the term of this Consent Order.

26.     For the duration of this Consent Order, Washington Trust will evaluate future opportunities for expansion within its Rhode Island lending area, whether by merger, acquisition, or opening new branches or loan production offices, in consideration of the goals of this Consent Order. Washington Trust must notify the

United States of any plans to open or acquire any new branches or other loan production offices within its Rhode Island lending area at the same time that it seeks approval from regulators.

27.    Washington Trust agrees to and has assigned two (2) full-time mortgage loan officers or community lending officers to solicit mortgage applications in majority-Black and Hispanic census tracts in its Rhode Island lending area.  Once the full-service branches required by this Section have been established, the Bank will assign at least one (1) mortgage loan officer or community lending officer to each new branch.  Washington Trust must maintain the mortgage loan officer assignments described in this Paragraph for the term of this Consent Order.

28.    The Parties agree that the branch employees required by Paragraph 27 of this Consent Order may work out of other branch locations periodically, so long as they maintain a physical presence in their assigned new branch location.

29.    The Parties agree that the branch employees required by Paragraph 27 of the Consent Order are also permitted to process applications for borrowers throughout the Bank's lending area.

### G.    Loan Subsidy Fund

30.    Washington Trust will invest a minimum of $7 million in a loan subsidy fund with the goal of increasing credit for home mortgage loans, home improvement loans, and home refinance loans extended in majority-Black and Hispanic census tracts in its Rhode Island lending area.  No more than 25% percent of the loan subsidy fund may be used for home refinances.

31.     Under the loan subsidy fund, Washington Trust will subsidize home mortgage, home improvement, and/or refinance loans made to "qualified applicants." A "qualified applicant" is any applicant who:

   a. applies for a mortgage for a residential property located in a majority-Black and Hispanic census tract in the Rhode Island lending area that will serve as the applicant's primary residence, or

   b. resides in a majority-Black and Hispanic census tract in the Rhode Island lending area and applies for a mortgage for a residential property located in the Rhode Island lending area that will serve as the applicant's primary residence.

32.     Loan subsidies under the loan subsidy fund can be provided by the following means (or any combination):

   c. originating a loan for a home purchase, refinancing, or home improvement at an interest rate below the otherwise prevailing market interest rate offered by Washington Trust;

   d. down payment assistance in the form of a direct grant;

   e. closing cost assistance in the form of a direct grant;

   f. payment of the initial mortgage insurance premium on loans subject to such mortgage insurance; and

   g. any other assistance measures approved by the United States.

The combined forms of subsidies set forth in this Paragraph cannot exceed $25,000 per qualified applicant unless Washington Trust receives a written non-objection from the United States to increase that amount.

33.    No provision of the Consent Order, including any loan subsidy or equivalent program, requires Washington Trust to make any unsafe or unsound loan or to make a loan to a person who is not qualified for the loan based upon lawful, nondiscriminatory terms; however, Washington Trust may choose to apply more flexible underwriting standards in connection with its programs under this Consent Order.  Washington Trust's underwriting standards applied to residents of majority-Black and Hispanic census tracts must be no less favorable than the standards applied in majority-white census tracts.

### H.    Community Development Partnership Program

34.    Washington Trust agrees to spend a minimum of $200,000 per year (or $1,000,000 over the term of the Consent Order) on partnerships with one or more community-based or governmental organizations that provide the residents of majority-Black and Hispanic census tracts in the Rhode Island lending area with services related to credit, financial education, homeownership, and foreclosure prevention.  Washington Trust will develop these partnerships in a manner consistent with achieving the goals of the Consent Order.

35.    Within 45 days of receiving non-objection from the United States regarding the Community Credit Needs Assessment described in Section III.B., Washington Trust will submit a proposal to the United States describing how it will

15

implement the requirements of Paragraph 34. The proposal will include an explanation of its proposed partner(s). The proposal should also describe, to the extent available, Washington Trust's plans to implement the partnership(s), as well as a description of how the partnership(s) will be used to meet the credit needs identified in the Community Credit Needs Assessment. The proposal will be subject to non-objection by the United States.

36. Washington Trust will evaluate the partnership(s) outlined in Paragraph 34 annually, including by considering the Community Credit Needs Assessment, in order to identify any needed changes to the program or better assist residents of majority-Black and Hispanic census tracts in the Rhode Island lending area in obtaining credit. Washington Trust will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Paragraph 52. Any proposed changes will be subject to non-objection by the United States.

### I.    Advertising, Outreach, Consumer Financial Education, and Credit Initiatives

37. Washington Trust will spend at least $1,000,000 over the term of this Consent Order on advertising, outreach, consumer financial education, and credit counseling focused on majority-Black and Hispanic census tracts in the Rhode Island lending area as described in this Section.

38. Within 45 days of receiving non-objection from the United States regarding the Community Credit Needs Assessment described in Section III.B., Washington Trust will submit a written Advertising, Outreach, Education, and

16

Credit Program Plan ("Outreach Plan") to the United States detailing how it will spend these funds for the period remaining in the term of the Consent Order. The Outreach Plan will include an explanation of why Washington Trust selected certain approaches and community partnerships and how Washington Trust's advertising, community outreach, education, and credit counseling initiatives will meet the credit needs identified in the Community Credit Needs Assessment. The Outreach Plan will be subject to non-objection by the United States. If the United States objects to any portion of the Outreach Plan, Washington Trust will make revisions and resubmit its proposal within 30 days of receiving the United States' objection. Washington Trust will begin implementation of its Outreach Plan within 30 days of receiving written notice of non-objection from the United States.

39.    Washington Trust will evaluate the strategies outlined in its Outreach Plan annually, including by considering the Community Credit Needs Assessment, in order to identify any changes necessary to better assist residents of majority-Black and Hispanic census tracts in its Rhode Island lending area in obtaining credit. Washington Trust will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Paragraph 52. Any proposed changes will be subject to non-objection by the United States.

a.    Advertising

40.    Washington Trust will endeavor to effectively advertise its residential loan products, including products for which the loan subsidy fund outlined in Section III.G. will be applied, to majority-Black and Hispanic census tracts in its Rhode

Island lending area in order to generate mortgage loan applications from qualified applicants in these census tracts. Washington Trust's advertising may include print media, radio, Internet advertising, television, direct mail, and any other appropriate medium. These advertisements must include similar information to other advertisements by Washington Trust. Washington Trust must advertise its mortgage lending services and products to majority-Black and Hispanic census tracts in its Rhode Island lending area at least to the same extent that it advertises its mortgage lending services and products to majority-white census tracts in its Rhode Island lending area.

41.   Washington Trust will create point-of-distribution materials, such as posters and brochures, for use in majority-Black and Hispanic census tracts to advertise products and services. Washington Trust will place or display these promotional materials in all of its branch offices.

42.   All of Washington Trust's print advertising and promotional materials referencing residential mortgage loans currently contain an equal housing opportunity logo, slogan, or statement and will continue to do so. Washington Trust agrees that all radio or television advertisements will continue to include an audible statement that Washington Trust is an "Equal Opportunity Lender" or "Equal Housing Lender."

43.   Within 90 days of the Effective Date, Washington Trust will engage a qualified third-party translator and propose a deadline to the United States for

translation of the portions of its website, www.washtrust.com, related to deposits/personal banking and homeownership/consumer lending into Spanish.

        b.    <u>Outreach</u>

44.    Washington Trust agrees to continue to provide at least four (4) outreach programs per year for real estate brokers and agents, developers, and public or private entities engaged in residential real estate-related business in majority-Black and Hispanic census tracts in its Rhode Island lending area to inform them of its products and services and to develop business relationships.

45.    Washington Trust may continue to underwrite or sponsor non-profit events in support of the majority-Black and Hispanic census tracts in its Rhode Island lending area that are related to building relationships within those areas and designed to generate applications for home mortgages.

        c.    <u>Consumer Financial Education and Credit Initiatives</u>

46.    Washington Trust has developed and agrees to continue to deploy a consumer financial education program designed to provide information, training, and counseling services about consumer finance and credit establishment and repair to individuals in majority-Black and Hispanic census tracts in its Rhode Island lending area.

47.    Washington Trust agrees to continue to provide a minimum of six (6) seminars per year, with translation and interpretation services in Spanish, for residents in majority-Black and Hispanic census tracts in its Rhode Island lending area and held in locations intended to be convenient to those residents. These

seminars will cover credit counseling, financial literacy, and other related consumer financial education, to help identify and develop qualified loan applicants from those areas.

48.    Washington Trust may develop and provide the consumer education seminars described in Paragraph 47 in conjunction with any community-based or governmental organization that Washington Trust partners with as described in Section III.H.

49.    Beginning after the Effective Date and during the first year of the term of the Consent Order, Washington Trust may conduct the outreach programs and consumer education seminars described in Paragraphs 42, 44, and 45 by hosting in-person events offered at a location reasonably convenient to the attendees or by hosting virtual events.  Beginning 12 months after the Effective Date, Washington Trust will submit to the United States a list of its planned outreach programs and consumer financial education seminars, specifying whether those events will be in-person or virtual, as part of its annual reporting requirement under Paragraph 52. The virtual nature of these programs and seminars will be subject to non-objection by the United States.

## IV.    EVALUATING AND MONITORING COMPLIANCE

50.    For the duration of this Consent Order, Washington Trust will retain all records related to its obligations under this Consent Order and all activities to carry out this Order.  The United States has the right to review and copy these records upon request.

51.    For the duration of this Consent Order, within 30 days of its submission of data to the Federal Financial Institutions Examination Council in accordance with the Home Mortgage Disclosure Act of 1975 ("HMDA"), 12 U.S.C. §§ 2801–2811, Washington Trust will provide this data to the United States in the same format, including the record layout.

52.    Beginning 12 months after the Effective Date, Washington Trust will submit annual reports to the United States on its progress in complying with the terms of the Consent Order and associated plans and programs.  The final report will be delivered to the United States at least 60 days prior to the expiration of the Consent Order.  The reports will provide a complete account of Washington Trust's actions to comply with the Consent Order, Washington Trust's assessment of the extent to which each obligation was met, if Washington Trust falls short of meeting its goals under the Consent Order, an explanation of why Washington Trust fell short for any particular component, and recommendations for additional actions to achieve the goals set forth in the Consent Order and associated plans and programs.

The annual reports shall also include an accounting of all subsidies made and mortgage loans originated under the loan subsidy program described in Section III.G. to date, including the following information: the HMDA LAR universal loan identifier for the subsidized loan; closing date; address of the property securing the loan; census tract location of the property securing the loan; ethnicity and/or race of the borrower; loan type; loan purpose; loan amount; loan subsidy amount; and loan subsidy type (i.e., down payment assistance, closing cost assistance).  The annual reports will also

indicate which of the loans benefitting from the loan subsidy fund were made to first-time homeowners. Washington Trust will attach to its reports copies of training materials and advertising and marketing materials distributed under this Consent Order as well as a detailed list of outreach and education events. Washington Trust's Board of Directors and CEO will review and approve the reports.

If the United States raises any objections to a report, the Parties will have 14 days to confer and resolve their differences. The Parties may mutually agree to additional time to confer, if necessary. If the Parties are unable to resolve their differences, either Party may bring the dispute to the Court for resolution.

53.    All materials required by this Consent Order will be sent to the United States by email to the Department of Justice attorney(s) assigned to this matter. The United States will notify Washington Trust in writing if the assigned attorneys change.

54.    Upon request by the Department of Justice attorney(s) assigned to this matter, the United States may request that Washington Trust submit materials required by this Consent Order by commercial overnight delivery service addressed as follows:

> Chief, Housing and Civil Enforcement Section
> Civil Rights Division
> U.S. Department of Justice
> 150 M Street NE, 8th Floor
> Washington, DC 20002
> Attn: Washington Trust, DJ# 188-66-6
>
> and

US Attorney's Office for the District of Rhode Island
One Financial Plaza, 17th Floor
Providence, RI 02903
Attn: AUSA Amy Romero

## V.    ADMINISTRATION

55.    The requirements of this Consent Order will remain in effect for five (5) years.

56.    If, within five (5) years of the Effective Date, Washington Trust has not invested all money in the loan subsidy fund described in Section III.G., then Section III.G of the Consent Order will remain in full effect until three (3) months after Washington Trust has invested all the money in the loan subsidy fund and has submitted a final report to the United States that demonstrates the fulfillment of this obligation.

57.    Washington Trust will maintain all documents and records necessary to demonstrate full compliance with the Consent Order, including all submissions made to the United States, until the requirements of Paragraphs 55 and 56 are fulfilled. Washington Trust must make these documents available to the United States upon the United States' request.

58.    Any time limits for performance may be extended by mutual written agreement of the Parties. Other modifications may be made only upon approval of the Court, by motion by any Party. If there are changes in material factual circumstances, the Parties will work cooperatively to discuss and attempt to agree to proposed modifications to the Consent Order.

59.    The United States agrees that, in every instance where its non-objection is required in the Consent Order, such non-objection shall be timely provided and shall not be unreasonably withheld.

60.    If disputes arise about the interpretation of, or compliance with, the Consent Order, the Parties will endeavor in good faith to resolve any dispute before bringing it to the Court for resolution.  If Washington Trust violates any provision of the Consent Order or fails to perform an act required by the Consent Order, the United States may move the Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

61.    Nothing in the Consent Order excuses Washington Trust's compliance with any currently or subsequently effective provision of law or order of a regulator. Should Washington Trust's primary regulator have concerns regarding compliance with banking regulations and this Consent Order, the United States agrees to confer with Washington Trust and its primary regulator regarding said compliance.

62.    Washington Trust will notify United States of any development that may materially affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Washington Trust; or a change in Washington Trust's name or address.  Washington

Trust will provide this notice as soon as practicable after learning about the development.

63.    Within 10 days of the Effective Date, Washington Trust will:

h.    Designate at least one telephone number and email, physical, and postal address as points of contact, which United States may use to communicate with Washington Trust;

i.    Identify all businesses for which Washington Trust is the majority owner, or that Washington Trust directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

j.    Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

64.    Washington Trust will report any change in the information required to be submitted under Paragraph 62 as soon as practicable.

65.    This Order is binding on Washington Trust, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with them who have actual notice of this Consent Order, assignees, and successors in interest.  If Washington Trust seeks to transfer or assign all or part of its operations to a successor or assign that intends to carry on the same or similar business, Washington Trust will obtain the written agreement of the successor or assign to obligations under the Consent Order as a condition of sale, merger, or other transfer.

66.    The Parties agree that litigation is not reasonably foreseeable.  If any Party implemented a litigation hold to preserve information, the Party is no longer required to maintain it.  Nothing in this Paragraph relieves either Party of any other obligations imposed by the Consent Order.

67.    The Parties to this Consent Order will bear their own costs and attorneys' fees.

68.    The Court will retain jurisdiction over this civil action to enforce the terms of this Consent Order.

SO ORDERED, this __31st__ day of ___October___, 2023.

_____

UNITED STATES DISTRICT JUDGE

Respectfully submitted this 27th day of September, 2023.

**FOR THE UNITED STATES OF AMERICA:**

|  |  |
|---|---|
|  | MERRICK B. GARLAND<br>Attorney General |
| ZACHARY A. CUNHA<br>United States Attorney<br>District of Rhode Island | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
|  | CARRIE PAGNUCCO<br>Chief |
| */s/ Amy R. Romero*<br>AMY R. ROMERO<br>KEVIN LOVE HUBBARD<br>Assistant United States Attorneys<br>United States Attorney's Office<br>District of Rhode Island<br>One Financial Plaza, 17th Floor<br>Providence, RI 02903<br>Phone: (401) 709-5010<br>Amy.Romero@usdoj.gov | */s/ Varda Hussain*<br>VARDA HUSSAIN<br>Special Litigation Counsel<br>Housing & Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street, NE<br>Washington, DC 20530<br>Phone: (202) 514-4713<br>Fax: (202) 514-1116<br>Varda.Hussain@usdoj.gov |

27

**FOR THE WASHINGTON TRUST COMPANY, OF WESTERLY:**

MATTHEW S. SHELDON
SABRINA M. ROSE-SMITH
SAMANTHA M. KIRBY
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4027
Fax: 202-204-7302
MSheldon@goodwinlaw.com

Attorneys for Defendant The
Washington Trust Company, of
Westerly